HOOD, Judge.
This is an action for damages for personal injuries sustained by plaintiff, Louis B. Mann, as the result of a rear-end motor vehicle collision. The case was tried by jury, and pursuant to a verdict of the jury judgment was rendered by the trial court in favor of plaintiff, awarding him the sum of $1,000.00. Plaintiff has appealed, contending that the award was inadequate.
The sole issue presented on this appeal is whether the award made by the trial court to plaintiff should be increased.
The accident occurred about 8:00 a. m. on February 18, 1964, in the City of Lafayette. Plaintiff stopped his automobile at an intersection to allow other traffic to pass before making a left turn, and while his car was stopped in that position it was struck from the rear by an automobile being driven by Mrs. Lois L. Broussard, one of the defendants. Mann contends that as a result of this collision he sustained a whiplash type injury to his neck.
Plaintiff testified that he did not realize that he had sustained an injury as a result of the accident until “within the week or two afterwards” when his neck began getting stiff and he for the first time began to experience pain in his shoulders and back. He consulted Dr. Walter B. Com-eaux, his family physician, on March 12, 1964, that being a little more than three weeks after the accident occurred, and Dr. Comeaux treated him by prescribing muscle relaxants and a home traction device and by administering physiotherapy treatments. Plaintiff testified that he “really had a stiff neck” from the time the symptoms first appeared until about the end of May, 1964, and that since that time his neck pain has been intermittent, being brought on by changes in the weather. He has received no medical treatment for this injury since the spring of 1965, but he stated that he has used a home traction device “off and on” since the date of the accident. He concedes that he has never missed any time from his work because of the injury, that since the date of the accident he has participated in Mardi Gras balls and civic activities as he did before, and that he has continued to hunt and fish as he did prior to the time he received this injury. He stated that the injury which he received has caused him to suffer intermittent pain and discomfort, but that it has never interfered with any of his activities.
The evidence shows that plaintiff was involved in another rear-end motor vehicle collision in 1959, and that as a result of that accident he sustained a whiplash type injury to his neck. He was treated by Dr. Comeaux for that injury, and he testified that he recovered from it within a period of from six months to one year. He accepted an offer made by an insurance company in settlement of the damages which he sustained as a result of that accident.
Dr. Comeaux, a general surgeon, examined plaintiff on March 12, and he administered physiotherapy treatments to him on March 13, 16 and 17, 1964. Thereafter, he examined plaintiff on five occasions for this injury, the last such examination having been made on April 15, 1965. He has *770 not examined or treated plaintiff for a neck injury or complaint since the last mentioned date, although he has seen and treated him for other conditions since that time. X-rays taken of plaintiff’s neck on March 12 were interpreted by Dr. Comeaux as revealing “a segmentation of the right transverse process of the first thoracic vertebra,” that being a congenital anomaly not caused by the accident. He testified, however, that an injury can produce much more serious consequences in persons with the type of congenital anomaly. He concluded that plaintiff had sustained a permanent disability as a result of the accident in that the muscles “have become spastic and shortened to a certain extent.” He feels that plaintiff “will continue to have pain from time to time throughout the rest of his life, and that intermittent traction will be necessary along with medication.” He explained, however, that the pain “comes and goes” and that the injury and pain are not disabling.
Dr. Fred C. Webre, an orthopedic surgeon, made an orthopedic and neurological examination of plaintiff originally on May 11, 1964, and he found “no indication of muscle impairment about the neck, shoulders, or upper extremity.” He examined the x-rays which had been made of plaintiff’s neck on March 12, 1964, at the request of Dr. Comeaux, and he found that “they showed no evidence of fracture, dislocation, bone or joint disease.” He thus disagreed with Dr. Comeaux in the latter’s conclusion that plaintiff had a congenita] anomaly of the spine. From the examinations made by Dr. Webre, he concluded that there were no objective signs of injury, pain or disability. He concluded, however, based solely on plaintiff’s subjective complaints, that the latter had sustained “a muscle strain type of thing of the neck, with possibly some ligamentous injury in the area of the neck.” He felt that “the subjective complaint voiced by the patient would subside without further treatment at the time I saw him,” and that plaintiff was not disabled from performing his normal duties.
Dr. Webre examined plaintiff again on February 9, 1966, and additional x-rays of his neck were made at that time. He found no evidence of muscle weakness, atrophy, fracture, dislocation, bone or joint disease or osteoarthritis in his neck. He did find a tightening of the ligamentum nuchae area when plaintiff forceably flexed his chin down, but he testified that he has found this condition on patients who have never had a trauma and he could not attribute it to the accident which occurred in 1964. And in any event he considered the condition, which appeared two years after the accident, as causing only a “discomfort” and as being only minimally disabling.
As we have already noted, the jury awarded plaintiff $1,000.00 for these injuries. The record shows that plaintiff incurred medical expenses amounting to $124.50, including doctor bills, drugs and the cost of x-rays, leaving $875.50 as the amount actually awarded as general damages. Plaintiff contends that this award is manifestly inadequate, and should be increased. He refers us to a number of cases in which larger awards were made for neck injuries.
If the testimony of Dr. Comeaux should be accepted, and that of Dr. Webre rejected, then it would appear that the award made to plaintiff was inadequate. On the other hand, if the testimony of Dr. Webre is accepted as being of greater weight than that of Dr. Comeaux, then the award would appear to be ample for the injury sustained by plaintiff. The jury apparently accepted Dr. Webre’s testimony as to the nature, extent and duration of the injury, and we cannot say that it erred in doing so. The opinion expressed by a qualified orthopedic surgeon on matters which are exclusively within the field of orthopedics is entitled to greater weight than those expressed on the same subject matter by a general surgeon. Joyner v. *771 L. L. Brewton Lumber Company, 171 So.2d 811 (La.App.3d Cir. 1965); Bass v. Travelers Indemnity Insurance Company, 173 So. 2d 399 (La.App.3d Cir. 1965).
In the instant suit we are not convinced that the award made to plaintiff is out of proportion to awards made in other cases for similar injuries, or that the jury abused the discretion which is vested in it in determining the amount to be awarded as general damages. We thus will affirm the judgment.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.